UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH BOLLINGER AND BRYAN BUBNICK,<br><br>Plaintiffs,<br><br>v.<br><br>RESIDENTIAL CAPITAL, LLC, AND ALLY FINANCIAL, INC.,<br><br>Defendants. | CASE NO. C10-1123 RSM<br><br>ORDER ON PENDING MOTIONS |

## I. INTRODUCTION

Before the Court for consideration are Defendants' Motion to Dismiss (Dkt. #30); Defendants' Motion to Strike Consent Forms and for Protective Order (Dkt. #37); and Plaintiffs' Motion for Conditional Class Certification and Judicial Notice (Dkt. #48). Defendants seek dismissal of all of plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs were properly classified as exempt employees, excepted from FLSA overtime requirements. Plaintiffs respond that defendants have not adequately plead and proved their asserted defenses, and their motion to dismiss must be denied. Defendants further seek an order striking the

consent forms filed by plaintiffs on behalf of putative collective action members. Finally, plaintiffs move this Court to conditionally certify a collective action pursuant to 29 U.S.C. § 216.

    The Court has reviewed these motions and all supporting materials, and finds them ripe for determination without oral argument. For the reasons set forth below, the Court DENIES defendants' Motion to Dismiss and Motion to Strike and GRANTS plaintiffs' Motion for Conditional Class Certification.

## II. DISCUSSION

### A. Background

    Defendant Ally Financial, Inc., (formerly operating under the name GMAC), is the parent company to defendant Residential Capital. Dkt. #1, ¶ 11. Residential Capital operates Ally Financial's mortgage brokerage business through its subsidiary Homecomings Financial. *Id.* Plaintiffs Deborah Bollinger and Bryan Bubnick were employed by defendants as mortgage underwriters in the Bellevue, Washington office of Homecomings Financial. Bollinger and Bubnick claim that their primary duty as mortgage underwriters was to verify that loans had been approved pursuant to defendants' own policies and guidelines. Bollinger Decl. ¶ 3; Bubnick Decl. ¶ 3. Defendants required plaintiffs to review a prescribed number of files per day, which often meant plaintiffs and other mortgage underwriters would work through breaks and lunches and above and beyond forty hours per week. Dkt. #1, ¶¶ 24, 28. During this time, plaintiffs and all other mortgage underwriters were uniformly classified as exempt employees, ineligible for overtime pay. *Id.* at ¶ 27.

    Plaintiffs now bring this action on behalf of themselves and a proposed class of defendants' former underwriters for violations of the Fair Labor Standards Act and Title 49 of the Revised Code of Washington. The gravamen of plaintiffs' complaint is that defendants

assigned more work than could be completed during a forty hour work week and then classified mortgage underwriters as exempt employees so that they could not collect overtime pay.

**B. The Fair Labor Standards Act**

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, mandates that no employer shall employ an employee for more than forty hours in a work week, unless that employee is compensated at one and one-half times his usual rate for hours worked in excess of forty. 29 U.S.C. § 207(a)(1). Section 216(b) provides a private right of action for employees wrongfully denied overtime compensation, including the right to maintain an action on the behalf of those employees "similarly situated." Plaintiffs claim that defendants assigned them more work than could be completed in a forty hour workweek, forcing them to work early morning, evening, and weekend hours, and to work through breaks and lunches. Because they were never compensated for overtime, plaintiffs allege these conditions violate § 207.

**C. Rule 12(b)(6) Motion to Dismiss**

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. 556). In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).

In their motion to dismiss, defendants put forth two separate but related bases for dismissal. Both come in the form of affirmative defenses which must be proven on the facts. At this time, these facts are not properly before the Court. The purpose of a Rule 12(b)(6) motion is to test the *legal* sufficiency of plaintiffs' complaint, assuming the facts alleged by plaintiffs are true. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (emphasis added). Because defendants' bases for dismissal involve a factual challenge to plaintiffs' claims, the Court will deny defendants' motion in its entirety.

### 1. Plaintiffs' Exempt Status

Under the FLSA, certain categories of employees are exempted from its protections. *See generally,* 29 C.F.R. § 541. At issue in this case is the administrative employee exemption, excepting those working in a "bona fide executive, administrative, or professional capacity" from the benefits the FLSA confers. 29 C.F.R. §541.200. An administrative employee is defined as one

> (1) Compensated … at a rate of not less than $455 per week…; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*Id.* An employer claiming the application of an exemption has the burden of proving it applies. *Webster v. Pub. Sch. Employees of Wash., Inc.*, 247 F.3d 910, 914 (9th Cir. 2001) (internal citations omitted). Exemptions are construed narrowly and are to be "withheld except as to persons plainly and unmistakenly within their terms and spirit." *Id.* (quoting *Klem v. County of Santa Clara,* 208 F.3d 1085, 1089 (9th Cir. 2000)). While "established position descriptions and titles" may inform the exemption analysis, "the designation of an employee as FLSA exempt or nonexempt must ultimately rest on the duties actually performed by the employee." 5 C.F.R. §

1  551.202(e). Accordingly, job title alone is insufficient to establish exempt status. 29 C.F.R. §
2  541.2.

3  Plaintiffs' central claim is that defendants uniformly misclassified mortgage underwriters
4  as exempt administrative employees. Defendants counter that underwriters' duties were
5  administrative in nature, thus plaintiffs were properly classified as exempt. Throughout their
6  motion, defendants argue that because "positions comparable to plaintiffs'" have been
7  categorized as exempt by the Department of Labor, their classification of underwriters was
8  lawful. However, at this stage the record contains little information regarding plaintiffs' duties,
9  so it is difficult to know what positions are comparable. Furthermore, it is clear that opinions on
10 the exempt status of "comparable" positions cannot be dispositive as to these plaintiffs; a factual
11 examination of plaintiffs' *actual* job duties and *actual* employment circumstances is required.

12 Defendants urge this Court to adopt the "conventional meaning" of "mortgage
13 underwriter" pursuant to *Iqbal*'s suggestion that courts "draw on [their] judicial experience and
14 common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The definition the defendants
15 want to embrace is that contained in the Department of Labor's Occupational Outlook
16 Handbook, which would bring plaintiffs under the purview of the September 8, 2006 DOL
17 opinion letter they claim provides the authority for classifying plaintiffs as exempt employees.
18 However, that Handbook describes the outlook for "loan officers," which may or may not be
19 synonymous with "mortgage underwriter." It is just these types of inferences the FLSA
20 regulations do not permit. At this juncture it would be inappropriate to decide the applicability
21 of an exemption.

22
23
24

### 2. Good Faith Reliance Defense

Defendants also argue that the Portal-to-Portal Act provides them a complete defense, thus negating plaintiff's claims. Defendants assert that because they relied in good faith on a Department of Labor opinion letter regarding "mortgage loan officers" in classifying underwriters such as plaintiffs, they cannot be liable under the FLSA. The relevant portion of the Portal Act, 29 U.S.C. § 259, states in part that if the employer

> pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation … Such a defense, if established, shall be a bar to the action or proceeding….

The defense is established where defendant shows he acted in (1) good faith; (2) conformity with; and (3) reliance on [a written administrative regulation, order, ruling, approval, or interpretation]. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 907 (9th Cir. 2003) (quoting *Frank v. McQuigg*, 950 F.2d 590, 598 (9th Cir. 1991). In other words, when defendant has acted in violation of the FLSA, he may nevertheless be absolved from liability if he acted in good faith reliance on some statement or interpretation of the law. *See also* 29 C.F.R. § 790.13. Defendant bears the burden of proving the affirmative defense. *Alvarez,* 339 F.3d at 907.

FLSA regulations further clarify these three elements. The "good faith" component contains both a subjective and objective component. 29 C.F.R. § 790.15. The employer's actual state of mind, as well as an inquiry into whether the employer reasonably relied upon the administrative authority, are both considered. *Id.* Furthermore, *actual* conformity and *actual* reliance are necessary to the good faith defense. 29 C.F.R. § 790.14; 29 C.F.R. § 790.16. These requirements ensure that employers bear the "heavy" burden of avoiding FLSA overtime requirements. *De Luna-Guerrero v. N.C. Grower's Ass'n., Inc.*, 370 F. Supp. 2d 386, 391 (E.D. N.C. 2005).

Issues of "good faith reliance" are inherently factual in nature and thus not of a type normally resolved at the motion to dismiss stage. *See Martinez v. Phillips Petroleum Co.*, 283 F. Supp. 514, 527 (D. Idaho 1968). Defendants essentially argue that, because their classification of mortgage underwriters coincided with what they believed to be the law at the time regarding the exempt status of "mortgage loan officers," they must have necessarily relied in good faith. But defendants presuppose what they must prove. They offer no evidence to demonstrate that their alleged compliance with the law was not merely coincidental, and nothing to show that defendants knew the law and took steps to follow it. Even if such proof exists, it is outside the scope of a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). The Court may not dismiss a complaint based on defendants' unsubstantiated assurances that they followed the law and their assertion of unproven defenses. Defendants' motion to dismiss must accordingly be denied.

3**. Defenses Demonstrated on the Face of the Complaint**

In their reply, defendants argue that Rule 12(b)(6) dismissal is appropriate on the basis of a defendant's asserted defense when the foundation for the defense is demonstrated "on the face of the complaint." *See Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 2010 WL 2354411, at *2 (E.D. Cal. June 9, 2010) (citing *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999); *Fogel v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *see also Davis v. Gauby*, 2010 WL 4846117, at *2 (3d Cir. November 30, 2010). As described above, the plaintiffs' complaint and the record thus far do not contain sufficient detail for the Court to make a determination on the merits of defendants' defenses at this time.

    4**. Dismissal of Plaintiff's State Law Claims**

In a footnote, defendants state that the Washington Minimum Wage Act "is similar to" and "mirrors the plain language of" the FLSA. Dkt. #30, p. 9, fn. 5. Thus, they contend all the same arguments for dismissal of plaintiffs' federal claims apply equally to plaintiffs' state law claims. Because the Court denies defendants' motion as to the federal claims, the motion is similarly denied with respect to the state law claims.

**D. Conditional Collective Action Certification**

Under the FLSA, a plaintiff may pursue his claims collectively on behalf of employees "similarly situated." 29 U.S.C. § 216(b). Employees choosing to join a FLSA collective action must "opt-in" by filing a written consent with the court. *Id.* As with Rule 23 class actions, FLSA collective actions serve to lower the cost of litigation for individual claimants and promote efficiency in resolution of claims and the use of judicial resources. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

In order to make certain that potential collective class members are notified of the action and their right to take part, the courts may authorize the issuance of notice by the named plaintiffs in an FLSA action to all other putative class members. *Does I Thru XXII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000) (citing *Hoffman-La Roche*, 493 U.S. at 169). Court participation in the notice process ensures that "the task is accomplished in an efficient and proper way" and helps to curb the potential for misuse of the class device. *Hoffman-La Roche*, 493 U.S. at 171.

    **1. Collective Class Standard**

Determining whether to certify a FLSA collective action is within the discretion of the court. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). The term

"similarly situated" is not defined by statute, and the Ninth Circuit has not spoken on the issue. *Hoffman La-Roche* suggested that a proper collective action consolidates "common issues of law and fact." 493 U.S. 170. Within the Ninth Circuit, district courts have adopted the two-tiered case-by-case approach followed by the majority of courts. *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 527 F. Supp. 2d 1053, 1070-71 (N.D. Cal. 2007); *see also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006); *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (holding district court did not err in employing *ad hoc* approach). The first stage in the two-step analysis examines whether potential class members should receive notice. *In re Wells Fargo*, 527 F. Supp. 2d at 1071. The second step, a multi-factored test, comes at the conclusion of discovery, usually upon defendant's motion to decertify. *Id.*

Because there is little evidence before the court at this stage, the court must rely on the pleadings and affidavits submitted by the parties in deciding whether potential plaintiffs should receive notice. *In re Wells Fargo*, 527 F. Supp. 2d at 1071. Plaintiffs must make "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Id.* (citing *Leuthold*, 224 F.R.D. at 468). However, this standard is "lenient" and usually results in certification. *Id.* The court must only be satisfied that a "reasonable basis" exists for plaintiffs' claims of class wide injury. *Khadera v. ABM Industries Incorporated*, 701 F. Supp. 2d 1190, 1194 (W.D. Wash. 2010) (citing *Hipp*, 252 F.3d at 1218).

**2. Analysis**

Plaintiffs in this case seek certification of a collective class composed of all current and former mortgage underwriters who worked for defendants at any time from three years prior to

the issuance of any notice to February 15, 2010. Dkt. #54-2. In support of their motion to conditionally certify, plaintiffs submitted their own declarations and those of six other mortgage underwriters formerly employed by defendants. Dkt. #48-5. All eight attest that they worked for defendants as mortgage underwriters and describe performing the same job duties. *See, e.g.,* Bollinger Decl. ¶¶ 2-3. They further state that they were subject to the same compensation scheme with similar potential for bonuses or discipline based on job performance. *Id.* at ¶ 4. These employees make the same allegation that they were forced to work more than 40 hours per week, and were denied overtime pay. *Id.* at ¶ 5. Finally, each alleges that she was misclassified as an exempt employee. *Id.*

Defendants oppose conditional certification by arguing that plaintiffs are not, in fact, similarly situated. They argue that the eight declarations do not contain enough specific information regarding the declarants' job duties and criticize their "cookie cutter" nature. But at this stage, under a lenient standard, the use of similarly worded or even "cookie cutter" declarations is not fatal to a motion to certify an FLSA collective action. *See In re Wells Fargo*, 527 F. Supp. 2d at 1060, 1071 (concluding that plaintiffs' cookie cutter declarations demonstrated a uniform policy and "…[a]lthough defendants raise substantial issues regarding the reliability of these declarations, plaintiffs' factual showing satisfies the lenient standard warranting conditional certification…"); *Labrie v. UPS Supply Chain Solutions, Inc.*, 2009 WL 723599, at *6 (N.D. Cal. March 18, 2009) (finding defendant's argument that plaintiffs' "identical, conclusory declarations" were not competent evidence as going to the merits).

Defendants also argue that an employer's exempt classification of a category of employees cannot form the basis of a collective action. While it is true that classification cannot be the *only* basis for collective action certification, it certainly can be considered for the purposes

1  of determining whether plaintiffs are "similarly situated" to the class they seek to represent.  *See*

2  *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010); *see also Stanfield v. First NLC*

3  *Financial Servs., LLC*, 2006 WL 3190527, at *4 (N.D. Cal. November 1, 2006) ("Even if it turns

4  out that plaintiffs cannot prevail on their FLSA claim because they are subject to exemptions, a

5  collective action should still be certified if they are similarly situated."); *Labrie*, 2009 WL

6  723599 at *5 (noting all 30 declarants stated they were classified as independent contractors).

7  Moreover, plaintiffs here allege the existence of common job titles, job duties, compensation

8  policies and the same violations of the FLSA.  They also correctly point out that defendants'

9  across-the-board reclassification of mortgage underwriters after the Second Circuit's decision in

10 *Davis v. J.P. Morgan Chase,* 587 F.3d 529 (2d Cir. 2009) implies that defendants treat all

11 mortgage underwriters in a similar fashion.

12        Defendants argue these plaintiffs' showing is even more deficient than that offered by

13 plaintiffs in *Burk v. Contemporary Home Servs.*, 2007 WL 2220279 (W.D. Wash. August 1,

14 2007).  The Court does not agree.  The *Burk* plaintiffs sought to certify a collective action

15 comprised of current and former employees working five different positions and without any

16 evidence that any of those employees wanted to assert similar claims.  *Id.* at *3-4.  This Court

17 accordingly denied collective and class certification.  *Id.* at *4.  Similarly, plaintiffs seeking

18 collective certification of a class of employees working in four different positions was denied in

19 *Castle v. Wells Fargo Financial, Inc.*, 2008 WL 495705, at *2 (N.D. Cal. February 20, 2008).

20 The court in *Castle* found that plaintiffs had failed to identify a "common policy or practice";

21 rather, they alleged they were denied overtime pay "under a variety of different circumstances."

22 *Id.*  The common policy plaintiffs plainly allege in this case is the uniform classification of

23

24

1 underwriters as exempt, which leads to the denial of overtime compensation, in violation of the
2 FLSA.

3 The Court finds this case closer to its recent decision in *Khadera v. ABM Industries*
4 *Incorporated*, 701 F. Supp. 2d 1190, 1194 (W.D. Wash. 2010). In *Khadera*, this Court certified
5 a class of janitors alleging FLSA overtime violations. *Id.* at 1193. While the plaintiffs' claims
6 were not identical – some claimed they worked through meals and breaks, some claimed they
7 worked "off the clock" and some alleged they were not paid for travel time between job sites –
8 plaintiffs still had met their burden of demonstrating they were "similarly situated" because
9 "[defendant] had a policy of refusing to pay overtime for all hours worked." *Id.*

10 Finally the Court notes that certification is proper because defendants have not refuted
11 plaintiff's claims that they are "similarly situated." Defendants' own human resources director,
12 Bridgit Appel, seems to validate plaintiffs' claims to similarity by stating in her declaration that
13 "the loan products and composition of the underwriting teams were similar in the Dallas and
14 Bellevue locations." Dkt. #52, ¶ 5. Defendants do not dispute that plaintiffs and all underwriters
15 were classified as exempt, or that they were never paid overtime. They have not offered any
16 affidavits from underwriters claiming to have been paid overtime, or any other evidence
17 contradicting plaintiffs' account. A lack of any such declarations, or the contradiction of
18 plaintiffs' claims of similarity, is commonly cited as a reason for granting certification. *See*
19 *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2008 WL 793838, at *4 (N.D. Cal. March 24, 2008);
20 *Labrie*, 2009 WL 723599, at *7.

21 **3. Form of Notice**

22 It is the role of the Court to ensure that the notice is "timely, accurate, and informative."
23 *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Plaintiffs attached a revised
24

judicial notice and consent form to their reply in support of the motion to certify. Dkt. #54-2. Defendants object to the proposed notice as being too one-sided. The Court agrees. The proposed notice contains no information regarding defendants' denial of plaintiffs' claims or their defenses. The parties are directed to meet and confer and then provide the Court with a mutually acceptable notice form.

**E. Motion to Strike Consent Forms**

Prior to plaintiffs' motion for conditional collective action certification, defendants moved to strike the consent forms signed by putative class members and filed by plaintiffs. The Court finds defendants' motion is mooted in large part by its decision to certify the collective action and authorize the issuance of notice. However, several of defendants' other arguments warrant comment.

First, the Court notes that the bulk of defendants' motion argues against the filing of consent forms on the basis that the court is to control the notice process. But defendants conflate the court-controlled notice process with the legitimate advertisement of legal services. They argue that the information contained on plaintiffs' counsel's website constitutes improper solicitation and is misleading. But the important fact which distinguishes this case from many of those defendants cite is that such a website is passive. A putative plaintiff must actively seek out the site to reach the information contained on the site regarding this case. While the Court is concerned that the tone of some of that information may impart a false sense of urgency, the character of the conduct here is a far cry from that of plaintiffs' counsel in cases like *Jones v. Caseys' General Stores*, 517 F. Supp. 2d 1080 (S.D. Iowa 2007).

*Casey's* involved repeated, direct contact and solicitation of potential plaintiffs by plaintiffs' counsel. The lawyers made phone calls directing putative class members to visit the

site www.caseysovertimelawsuit.com. 517 F. Supp. 2d at 1087-1088. The website contained factual allegations not contained in the complaint, as well as "litigation goals" implying liability had already been established. *Id.* Absent evidence of more aggressive behavior such as plainitffs' counsel in *Casey's* exhibited, the Court will deny defendants' motion.

Second, the Court notes that in this circuit, it is not at all clear that the filing of consent forms prior to collective action certification is improper. *See Labrie*, 2009 WL 723599, at *2 (N.D. Cal. March 18, 2009) (146 consent forms filed prior to certification); *Stanfield v. First NLC Financial Servs., LLC*, 2006 WL 3190527, at *2 (N.D. Cal. November 1, 2006) (164 consents filed); *Adams v. Inter-Con Sec. Systems, Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007) (383 consents filed). In fact, an individual claimant under § 216(b) is not deemed to have initiated suit until his consent is filed, providing incentive for putative class members to file their consent forms early. 29 U.S.C. § 257; s*ee also King v.* Carey, 405 F. Supp. 41 (W.D. N.Y. 1975) ("the statute of limitations continues to run for those employees who have not given their consent to join…"); *Perella v. Colonial Transit, Inc.*, 148 F.R.D. 147 (W.D. Pa. 1991), *aff'd* 977 F.2d 569 (3d Cir. 1992) (holding plaintiff was barred where no written consent was filed by any plaintiff within two-year statutory limit). In addition, obtaining consent forms prior to certification assists plaintiffs' counsel in investigating the basis for any collective claims.

The Court finds no grounds to strike the consent forms filed in this case. Any potential prejudice suffered by defendants will be cured upon issuance of formal notice of this collective action. Accordingly, defendants' motion to strike shall be denied.

### III.    CONCLUSION

Having considered the pending motions and responses, and the balance of the record, the Court now ORDERS as follows:

1. Defendants' Motion to Dismiss (Dkt. #30) is DENIED in its entirety.
2. Defendants' Motion to Strike Consent Forms and for Protective Order (Dkt. #37) is DENIED.
3. Plainitffs' Motion for Conditional Class Certification and Judicial Notice (Dkt. #48) is GRANTED.  Plaintiffs may proceed with their FLSA claims as a collective action.
4. The parties are directed to meet and confer within twenty (20) days of the issuance of this order and to draft a stipulated notice form.  The proposed notice form should be submitted to the Court within thirty (30) days of the issuance of this order.
5. The parties are directed to meet and confer and provide the Court with a revised Joint Status Report that proposes a schedule for resolution of this action.  Any proposed schedule must be tailored to the substantive claims in this case and should accommodate the scheduling of any motions pursuant to the second step of the "similarly situated" collective action inquiry.  *See Hipp*, 252 F.3d at 1218.

Dated January 5, 2011.


_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE