THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON

DEBORAH BOLLINGER and BRYAN BUBNICK, individually and on behalf of all others similarly situated,

                Plaintiffs,

    v.

RESIDENTIAL CAPITAL, LLC, GMAC MORTGAGE, LLC, and ALLY FINANCIAL, INC.,

                Defendants.

CASE NO.  C10-1123 (RSM)

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

NOTE ON MOTIONS CALENDAR: FEBRUARY 10, 2012

ORAL ARGUMENT REQUESTED

1

## <u>TABLE OF CONTENTS</u>

2

**Page No.**

3
INTRODUCTION .................................................................................................... 1

4
RELEVANT FACTUAL BACKGROUND ............................................................. 1

5
   I.    Plaintiffs Performed Non-exempt Production Work as Mortgage Underwriters ........ 1

6
        A.   Plaintiffs' Job Duties Were Directly Related to Selling Loans ........................ 1

7
        B.   Plaintiffs Had No Role in Creating or Modifying Guidelines .......................... 3

8
        C.   Plaintiffs Were Paid and Evaluated Based on Production and Whether They

9
             Followed Guidelines ......................................................................................... 3

10
   II.   Defendants Failed to Comply With the FLSA and Eventually Reclassified Their

11
        Mortgage Underwriters ...................................................................................... 5

12
   III.  Defendants' Claims of "Good Faith" Reliance ......................................................... 6

13
        A.   The DOL's FLSA2006-31 Opinion Letter Does Not Address Underwriters or

14
             Whether Underwriters Meet the Administrative Exemption .............................. 7

15
        B.   Defendants' Outside Legal Counsel Confirmed That the FLSA2006-31 Opinion

16
             Letter Does Not Address Underwriters, or Whether Underwriters Meet the

17
             Administrative Exemption .................................................................................. 9

18
LEGAL ARGUMENT ............................................................................................ 10

19
   I.    The Court Should Grant Summary Judgment in Plaintiffs' Favor on Defendants'

20
        Administrative Exemption Defense .................................................................. 10

21
        A.   Plaintiffs are Production Workers, Not Administrative Employees .............. 12

22
           1.  The Administrative/Production Dichotomy ................................................ 12

23
           2.  Plaintiffs Were Production Workers Who Did Not Qualify For the

24
               Administrative Exemption ........................................................................ 13

25
        B.   Even If the Court Declines to Use the Administrative/Production Dichotomy,

26
             Defendants Cannot Satisfy the Second Prong of the Administrative

**NICHOLS KASTER LLP**
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

Exemption ........................................................................................ 16

II.     The Court Should Grant Summary Judgment in Plaintiffs' Favor on Defendants'

Portal-to-Portal Act Defense ................................................................. 17

A.  The Portal-to-Portal Act "Good Faith Reliance"

Defense……………………………………………………………………18

B.  Defendants Cannot Show Good Faith Reliance............................................. 19

1.   The DOL's FLSA2006-31 Opinion Letter on Loan Officers Cannot Support

Defendants' Good Faith Defense ............................................................. 20

2.   The DOL Regulations Cited by Defendants Cannot Form the Basis of a

Good Faith Defense .................................................................................. 22

CONCLUSION .......................................................................................... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*Adams v. Pittsburg State Univ.*,
    832 F. Supp. 318 (D. Kan. 1993) .............................................................. 23

*Alvarez v. IBP, Inc.*,
    339 F.3d 894 (9th Cir. 2003) ........................................................... 18-19, 26

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................... 10

*Arnold v. Ben Kanowsky, Inc.*,
    361 U.S. 388 (1960) ........................................................................... 10

*Batterton v. Francis*,
    432 U.S. 416 (1977) ........................................................................... 11

*Bothell v. Phase Metrics, Inc.*,
    299 F.3d 1120 (9th Cir. 2002) .......................................................... 11-13

*Bratt v. County of Los Angeles*,
    912 F.2d 1066 (9th Cir. 1990) ...................................................... 10-11, 17

*Burnison v. Memorial Hosp., Inc.*,
    820 F. Supp. 549 (D. Kan. 1993) ......................................................... 23

*Cole v. Farm Fresh Poultry, Inc.*,
    824 F.2d 923 (11th Cir. 1987) ................................................... 18-19, 21, 23

*Dalheim v. KDFW-TV*,
    918 F.2d 1220 (5th Cir. 1990 ............................................................. 12-13

*Davis v. J.P.Morgan Chase & Co.*,
    587 F.3d 529 (2d Cir. 2009) ...............................................6, 12-13, 16-17

*De Luna-Guerrero v. N.C. Grower's Ass'n., Inc.*,
    370 F. Supp. 2d 386 (E.D.N.C. 2005) .................................................. 19

*Desmond v. PNGI Charles Town Gaming, L.L.C.*,
    564 F.3d 688 (4th Cir. 2009) ............................................................. 12-13

*EEOC v. Home Ins. Co.*,
    672 F.2d 252 (2d Cir. 1982) ........................................................ 18-19, 23

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

*Frank v. McQuigg,*
  950 F.2d 590 (9th Cir. 1991) ...................................................................... 19

*Gallegos v. Equity Title Co. of Am.,*
  484 F. Supp. 2d 589 (W.D. Tex. 2007) ...................................................... 13

*Horan v. King County,*
  740 F. Supp. 1471 (W.D. Wash. 1990) ...................................................... 19

*Int'l Ass'n of Firefighters, Local 349 v. City of Rome,*
  682 F. Supp. 522 (N.D. Ga. 1988)............................................................. 22

*Klem v. County of Santa Clara,*
  208 F.3d 1085 (9th Cir. 2000 ...................................................................... 10

*Martin v. Cooper Elec. Supply Co.,*
  940 F.2d 896 (3d Cir. 1991) ................................................................ 12-13

*Martin v. Indiana Michigan Power Co.,*
  381 F.3d 574 (6th Cir. 2004)...........................................................12-13, 17

*Neary v. Metro. Property & Cas. Ins. Co.,*
  517 F. Supp. 2d 606 (D. Conn. 2007) ........................................................ 17

*Nelson v. Ala. Inst. for Deaf and Blind,*
  896 F. Supp. 1108 (N.D. Ala. 1995) .......................................................... 22

*Reich v. State of New York,*
  3 F.3d 581 (2d Cir. 1993) ..................................................................... 12, 13

*Renfro v. City of Emporia, Kan.,*
  732 F. Supp. 1116 (D. Kan. 1990) ............................................................. 23

*Schneider v. City of Springfield,*
  102 F. Supp. 2d 827 (S.D. Ohio 1999) ...................................................... 22

*Seminole Tribe v. Florida,*
  517 U.S. 44 (1966) ...................................................................................... 12

*Shockley v. City of Newport News,*
  997 F.2d 18 (4th Cir.1993)......................................................................... 12

*Whalen v. J.P. Morgan Chase & Co.,*
  569 F. Supp. 2d 327 (W.D.N.Y. 2008)......................................................... 5

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -iv
CASE NO. 2:10-CV-01123 RSM

**NICHOLS KASTER LLP**
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

1

## RULES AND STATUTES

2
29 U.S.C. § 207(a)(1) .................................................................................. 10

3
29 U.S.C. § 213(a)(1) .................................................................................. 10

4
29 U.S.C. § 216(b) ....................................................................................... 18

5
29 U.S.C. § 259 ............................................................................................ 19

6
29 U.S.C. § 259(a) ................................................................................ 1, 6, 18

7
29 C.F.R. § 541.200 ............................................................................ 2, 6, 22

8
29 C.F.R. § 541.200(a) ........................................................................... 6, 10

9
29 C.F.R. § 541.201(a) ......................................................................... 11, 16

10
29 C.F.R. § 541.201(b) ......................................................................... 11, 16

11
29 C.F.R. §541.203(b) ............................................................................ 6, 22

12
29 C.F.R §541.703(b)(7) ........................................................................ 6, 23

13
29 C.F.R §541.704 .................................................................................. 6, 23

14
29 C.F.R. § 790.13(a) ................................................................................... 18

15
29 C.F.R. § 790.14(a) ................................................................................... 19

16
29 C.F.R. § 790.15(a .................................................................................... 19

17
29 C.F.R. § 790.16(a) ................................................................................... 19

18
69 F.R. 22122 ............................................................................................... 12

19

20

21

22

23

24

25

26

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

**INTRODUCTION**

Plaintiffs performed non-exempt production work as mortgage underwriters for Defendants, and do not meet the requirements for the Fair Labor Standards Act's administrative exemption. Defendants reclassified all of their mortgage underwriters from "exempt" to "non-exempt" on February 15, 2010. Despite this, Defendants refused, and continue to refuse, to pay Plaintiffs the unpaid overtime that they are due. Defendants claim they have no liability because they supposedly relied, pursuant to 29 U.S.C. § 259(a), on written interpretations from the DOL that, Defendants claim, "expressly" proclaimed that underwriters are exempt. The problem with Defendants' defense is that no such DOL interpretation exists. There is no DOL opinion letter or regulation advising that underwriters qualify for the administrative exemption. There never has been. Indeed, discovery has revealed that the outside lawyers hired by Defendants in 2006 specifically advised Defendants that no such authority exists. At bottom, Defendants' § 259 good faith defense is nothing more than an attempt to convince this Court that Defendants themselves should be the ones who decide whether they are liable for back pay in this case. This Court should not be persuaded. As President Harry Truman confirmed, § 259 was <u>not</u> intended "to make each employer his own judge of whether or not he has been guilty of a violation." Plaintiffs are entitled to summary judgment on both (1) Defendants' "administrative exemption" defense, and (2) Defendants' good faith reliance defense under 29 U.S.C. § 259. Plaintiffs' motion should be granted in full.

**RELEVANT FACTUAL BACKGROUND**[1]

**I.      Plaintiffs Performed Non-exempt Production Work as Mortgage Underwriters**

     **A.      Plaintiffs' Job Duties Were Directly Related to Selling Loans**

Defendants Residential Capital, LLC, GMAC Mortgage, Inc., and Ally Financial, Inc. (collectively, "GMAC") are in the business of producing (i.e., "selling") residential mortgages.

---

[1] Because all facts must be viewed in the light most favorable to Defendants on Plaintiffs' motion for summary judgment, Plaintiffs cite exclusively to Defendants' own documents and the testimony of Defendants' employees and witnesses for purposes of this motion.

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

(Janiczek Dep. 28:13-25; Ex. A. (Form 10-K) pp.3-4, 54.)  Plaintiffs are 91 mortgage

underwriters who have worked for Defendants.  (ECF No. 114 (Am. Compl.).)  As

underwriters, Plaintiffs performed production work directly related to selling loans.  (Janiczek

Dep. 56:16-57:11 (admitting that the duties of underwriters are "connected" to the mortgage

sales function); Ex. B (emails between Defendants and outside counsel) at DEF-DB 5878

(confirming that underwriter job duties are related to selling loans).)  Indeed, Defendants refer

to underwriters who review loans as "production" underwriters.  (Muscovitch Dep. 61:12-15.)

     GMAC's mortgage underwriters are responsible for confirming that mortgage

applications meet GMAC guidelines and secondary market guidelines.  (Muscovitch Dep. 15:2-

9.)  Underwriters do not "advise" or "counsel" customers on which loan product would best

meet their needs.  (Ex. B at DEF-DB 5878 (confirming that underwriters do not advise or

counsel customers).)  Loans are submitted to underwriters after the loan application has already

been taken by a loan officer/agent, and the data from the application has been run through an

automated underwriting system ("AUS"). (*Id.*; Muscovitch Dep. 54:24-55:13.)  The AUS

system generates a recommendation on whether the loan should be approved.  (Muscovitch

Dep. 53:4-17.)  The underwriter then validates that the data entered into the AUS system was

accurate, and also reviews the loan file for compliance with guidelines that cannot be reviewed

by the automated system.  (Ex. B at DEF-DB 5878 (summarizing the process); *see also*

Muscovitch Dep. 19:2-21:9.)  If information is missing from the loan file, the underwriter

requests the information.  (Muscovitch Dep. 19:22-20:1.)  "If the loan does not meet the

guidelines, they'll turn that loan request down."  (*Id.*)

     The guidelines underwriters follow are contained in product summaries, client guides,

credit overlays, and reports generated from the AUS systems.  (*Id.* 43:22-44:3, 49:18-50:4.)  As

Defendants admit, ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████[2]  (Ex. C (emails between Defendants and

---

[2] Plaintiffs *did not* perform work requiring them to exercise discretion and independent judgment with respect to
matters of significance.  *See* 29 C.F.R. § 541.200(a).  However, as set forth below, that prong of the administrative

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

outside counsel) at DEF-DB 5847.) ███████████████████████████

███████████████████████████ (*Id.*)

**B.      Plaintiffs Had No Role in Creating or Modifying Guidelines**

GMAC's underwriters have no role in creating, updating, or modifying the underwriting guidelines.  This work is done by the Credit Policy department.  (Muscovitch Dep. 31:21-23.) Credit Policy is responsible for creating, updating, and modifying the product summaries, client guides, and credit overlays used by underwriters. (*Id.* 50:5-9, 51:13-16, 52:14-23.) Underwriters are not involved in these activities.  (*Id.* 50:12-14, 51:17-19, 53:1-3; *see also* Ex. B at DEF-DB 5878 ███████████████████████████████████

████ Credit Policy also maintains the overall ability to approve exceptions that do not conform to the loan programs and guidelines.  (Muscovitch Dep. 31:19-32:10.)

**C.      Plaintiffs Were Paid and Evaluated Based on Production, and Whether They Followed Guidelines**

Underwriters at GMAC are paid and evaluated on the number of loans they underwrite, and whether they followed guidelines.  They are paid a base salary, plus a production-based "incentive."  (Muscovitch Dep. 75:17-24.)  The incentive is based on the number of "units" underwritten during the month, with different types of loans carrying different unit values.  (*Id.* 76:19-77:7; *e.g.*, Ex. D (excerpts from underwriter compensation plans) at DEF-DB 5904 (describing unit values).)  Underwriters are expected to maintain a certain threshold (e.g., 90 units per month), and earn a certain dollar amount (e.g., $20.00) for each unit between the production threshold and the production maximum.[3]  (Muscovitch Dep. 76:19-77:7; *e.g.* Ex. D at DEF-DB 5904 █████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████

exemption is not at issue in this motion.  Accordingly, Plaintiffs have not set forth exhaustive facts relating to the "discretion and independent judgment" element of the administrative exemption in this brief.

[3] Underwriter production incentives may also be measured by the number of loans reviewed in a certain week, or the number of loans reviewed on the weekend.  (*E.g.*, Ex. E (underwriter productivity worksheets); Ex. F (email dated 10/28/2005).)

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

1  Incentives are paid on the number of "decisions" made, regardless of whether the loan was

2  approved, suspended, or denied.  (Ex. B at DEF-DB 5878 █████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████████

5        Underwriters are evaluated based on the number of files they review.  For instance,

6  underwriters are expected to maintain an average daily productivity standard by reviewing a

7  specified number of files per day.  (*E.g.*, Ex. G (performance review) at DEF-DB 837

8  ████████████████████████████████████████████████████

9  ███████████  Muscovitch Dep. 70:8-16, 71:6-73:9.)   Falling below standards can affect an

10  underwriter's performance review.  (*E.g.*, Ex. G at DEF-DB 837 ███████████████████

11  ████████████████████████████████████████████  GMAC keeps productivity

12  reports to track the productivity of each underwriter.  (Muscovitch Dep. 81:16-82:7.)

13        Underwriters are also evaluated on whether their loans meet the underwriting

14  guidelines.  Underwriters receive a "QC rating" that shows how many errors the quality control

15  department uncovered when reviewing an underwriter's files.  (*Id.* 66:7-14.)  Errors are

16  situations "where the file wasn't documented according to agency guidelines," which can lead

17  to a loan having to be repurchased.[4]  (*Id.* 66:18-22.)  Underwriters with low QC ratings are

18  given "action plans," and can be terminated if errors continue.  (*Id.* 66:23-67:3.)  Underwriters'

19  work is also reviewed through "self-testing," where a designated team reviews work done the

20  previous day.  (*Id.* 67:17-68:9; *see also* Ex. H (monitoring framework) pp.5-7.)

21        Whether a loan eventually defaults is not a factor in the evaluation of an underwriter's

22  work.  If a loan defaults and an underwriting error is discovered (i.e., failure to document

23  according to guidelines), this may affect the underwriter's QC rating.  (Muscovitch Dep. 82:18-

24  83:9, 66:18-22.)  However, if the underwriter did their job correctly (i.e., there are no errors in

25

26  _____

[4] Production underwriters do not work in the quality control department.  (Muscovitch Dep. 68:10-20.) Defendants also have separate audit and compliance departments, which test the policies and procedures of various business units, and make sure business units are aware of changes in laws and regulations.  (Janiczek Dep. 65:23-67:4.)

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

following guidelines) and the loan still defaults, there are no negative consequences from the underwriting prospective.  (*Id.* 83:11-16.)  This is because the company *expects* a certain number of loans to default; this is addressed not by the underwriters, but by how the products are priced.  (*Id.* 83:17-84:1.)  As Defendants testified, "So regardless of how we underwrite the loan, the loans can still go down[.]"  (*Id.* 83:21-24.)

## II.   Defendants Failed to Comply With the FLSA and Eventually Reclassified Their Mortgage Underwriters

Defendants engaged outside counsel to review the classification of their underwriters in both 2006 and 2009.  Despite this, Defendants' underwriters were wrongly classified, and Defendants were forced to reclassify them to "non-exempt" on February 15, 2010.  Not every detail of these decisions are pertinent here; a general overview is provided.

In 2006, Defendants hired the Morgan Lewis law firm to audit the classification of the company's mortgage underwriters.  (Janiczek Dep. 77:24-78:17.)  On December 5, 2006, Morgan Lewis delivered a letter to Defendants outlining their advice that Defendants' underwriters could be classified as exempt under the FLSA's administrative exemption.  (*Id.* 86:19-87:9; Ex. I (Morgan Lewis letter).)  Defendants did not perform their own analysis outside of what was done with Morgan Lewis.  (Janiczek Dep. 90:10-91:4; *see also* Janiczek Dep. 68:18-24, 71:2-14.)

In mid-2009, Defendants retained Maxine Goodman of the Goodman Law Group to perform another review of the underwriter job.  (Goodman Dep. 12:7-13:1.)  After exchanging several emails with Defendants, Ms. Goodman confirmed in a phone call that she felt Defendants could classify underwriters as exempt.[5]  (*Id.* 39:2-40:8.)  Her opinion was based largely on *Whalen v. J.P. Morgan Chase & Co.*, 569 F. Supp. 2d 327 (W.D.N.Y. 2008), a district court case holding that underwriters are exempt. (*See id.* 15:6-17.)

---

[5] GMAC assured Ms. Goodman that the mortgage underwriter job duties had not changed since the time of the 2006 audit.  (Goodman Dep. 37:24-38:4.)

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

On November 20, 2009, the Second Circuit Court of Appeals reversed the *Whalen* case, and held that underwriters, as a matter of law, do not meet the administrative exemption. *Davis v. J.P.Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009). GMAC hired Ms. Goodman to give an opinion on whether their underwriters should be reclassified. (Goodman Dep. 40:9-19.) After receiving confirmation that the relevant facts noted by the Second Circuit in *Davis* were also present at GMAC, Ms. Goodman recommended that Defendants reclassify their underwriters to non-exempt. (Ex. B at DEF-DB 5876-78 ███████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████)

## III.    Defendants' Claims of "Good Faith" Reliance

Despite acknowledging that their underwriters were wrongly classified, Defendants refused to give Plaintiffs the overtime compensation to which they were entitled. Defendants claim they have no liability because they are supposedly entitled to the Portal-to-Portal Act's "good faith reliance" defense under 29 U.S.C. § 259(a). The primary piece of authority on which Defendants base their § 259 defense is Department of Labor opinion letter FLSA2006-31, which addressed the application of the administrative exemption to mortgage loan officers, not underwriters.[6] (*See* ECF No. 30 at 7.) In a motion to dismiss, Defendants represented to the Court that the DOL's opinion letter "expressly" instructed that underwriters were exempt, and that the DOL later "reversed its previous position on underwriters" by withdrawing the FLSA2006-31 opinion letter. (*Id.* at 2.)

Discovery has confirmed that this is false. FLSA2006-31 does not address, expressly or otherwise, the application of the administrative exemption to underwriters. The party who requested the letter never even asked for an opinion on underwriters. Moreover, discovery has

---

[6] Defendants also claim to have relied in good faith on the Department of Labor's general regulations at 29 C.F.R. §§ 541.200, 541.203(b), 541.703(b)(7), and 541.704. (ECF No. 30 at 7.) As set forth in detail in the legal argument section of this brief, none of the authorities on which Defendants claim to have relied state, clearly or otherwise, that mortgage underwriters are exempt from overtime under the FLSA.

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

revealed that Defendants were advised by the Morgan Lewis firm in 2006 that the DOL has _never_ issued an opinion on whether underwriters are exempt.

### A.  The DOL's FLSA2006-31 Opinion Letter Does Not Address Underwriters, or Whether Underwriters Meet the Administrative Exemption



The DOL issued FLSA2006-31 on September 8, 2006.  (Ex. K (FLSA2006-31) p.1.) Logically, since the party seeking the letter never asked for an opinion on underwriters, the DOL never gave an opinion on underwriters.  The text of FLSA2006-31 clearly states that the letter was issued in response to a request for an opinion on the application of the administrative exemption to "mortgage loan officers" or "other job titles for referring to loan officers" such as "mortgage loan representatives," "mortgage loan consultants," "mortgage loan originators," or "loan consultants."  (_Id._ p.1.)  Because the letter addresses loan officers, and not underwriters, the word "underwriter" is never even mentioned.  (_See id._)

Not surprisingly, the job duties described in FLSA2006-31 are not the job duties of an underwriter.  The letter describes the purported duties of hypothetical loan officers,[8]  who work

---

[7] The original opinion letter request to the DOL that preceded FLSA2006-31 was produced by Defendants in discovery.

[8] As a note, the purported loan officer duties described in FLSA2006-31 do not even accurately describe a loan officer, which has cast considerable doubt on whether the letter can even serve as the basis for a § 259 defense relating to the classification of loan officers.  _See generally Henry v. Quicken Loans, Inc._, No. 11-2125 (6th Cir.) (Appellant's Br. filed 1/10/12).

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

directly with the prospective homebuyer to originate loans.  (*Id.*, pp.1-2.)  Unlike underwriters, the hypothetical loan officers described in the letter: (1) "work with the employer's customer to assist them in identifying and securing a mortgage loan that is appropriate for their individual financial circumstances and is designed to help them achieve their financial goals, including home ownership"; (2) "respond to and follow up on customer inquiries (sometimes referred to as 'leads') that come from several sources"; (3) collect and analyze the customer's financial information to determine whether the customer and the property qualify for the loan; (3) "advise the customer about the risks and benefits of the loan alternatives, including the options and variables involves"; (4) provide "specific analysis, evaluation, and advice" to the customer on "multiple loan products" and the "hundreds of loans to choose from"; (5) "encourag[e] the customer to do business with his or her employer's mortgage banking customer rather than a competitor"; and (6) "market[] the employer's mortgage banking company and products generally, as well as the promotion of brand awareness and the creation of demand among realtors, builders, developers, and other entities."  (*Id.*)

The DOL concluded that loan officers who performed the duties described could meet the FLSA's administrative exemption.  In reaching its conclusion, the DOL relied heavily on duties such as "advising the customer about the risks and benefits of the loan alternatives in light of their individual financial circumstances" and "advising the customer about avenues to obtain a more advantageous loan program."  (*Id.*, pp. 4-5.)  The DOL was very clear that its opinion was strictly limited to the hypothetical facts set forth in the letter, and that the "*[e]xistence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein.*"[9]  (*Id.*, p. 7 (emphasis added).)

---

[9] The DOL withdrew the FLSA2006-31 loan officer letter on March 24, 2010, citing its "misleading assumption and selective and narrow analysis."  (Ex. L (AI2010-1).)

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -8
CASE NO. 2:10-CV-01123 RSM

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

**B.    Defendants' Outside Legal Counsel Confirmed That the FLSA2006-31 Opinion Letter Does Not Address Underwriters, or Whether Underwriters Meet the Administrative Exemption**

The fact that FLSA2006-31 does not address underwriters is confirmed by communications between Defendants and their outside counsel shortly after the letter was issued, and their further admissions during the course of discovery.

On September 11, 2006, three days after the DOL issued FLSA2006-31, the Morgan Lewis firm emailed Defendants a copy of the letter.  (Ex. M (email from Morgan Lewis).)

Not surprisingly, since FLSA2006-31 did not apply to underwriters, the December 6, 2006 underwriter audit letter that Morgan Lewis issued to Defendants included no reference to the DOL's FLSA2006-31 opinion letter.   (*See* Ex. I.)  In fact, the attorneys from Morgan Lewis told Defendants in no uncertain terms that "*[t]here have been no opinion letters issued by the Department of Labor analyzing this particular issue.*"[10]  (*Id.*, p.6 n.3 (emphasis added).)  Counsel from Morgan Lewis candidly admitted at her deposition that there is no DOL letter that specifically addresses underwriters, or the application of the administrative exemption to underwriters.  (Bouchard Dep. 26:12-25 ("There had been no opinion letters addressing the underwriter position specifically."), 34:8-17 ("There's not an opinion letter that addresses underwriters specifically."), 35:4-16 ("It did not address all of the job duties of the underwriter because it was addressing the job duties specific to a loan officer.").)

---

[10] Defendants reviewed the legal research contained in the letter, and agreed with it.  (Janiczek Dep. 88:1-17.) Indeed, they had the chance to make changes to the letter after they received it, and made none.  (Bouchard Dep. 28:7-22.)

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

1    Like the Morgan Lewis attorneys, Maxine Goodman, who worked for Defendants

2  during the 2009 audit, admitted at her deposition that she *never advised* Defendants that the

3  FLSA2006-31 letter clearly addressed how underwriters should be classified.  (Goodman Dep.

4  34:10-16.)  She testified, "Gave a clear answer?  No, that would be irresponsible of me as an

5  attorney to say that something gave a clear answer."  (*Id.*)

6  <u>LEGAL ARGUMENT</u>[11]

7  **I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN PLAINTIFFS'
       FAVOR ON DEFENDANTS' ADMINISTRATIVE EXEMPTION DEFENSE**

8    The FLSA requires employers to pay their employees one and one-half times their

9  "regular rate" for each hour worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).

10  Congress exempted from the FLSA's overtime requirement employees "employed in a bona

11  fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  "An employer

12  who claims an exemption from the FLSA bears the burden of demonstrating that the exemption

13  applies."  *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000).  FLSA

14  "exemptions are to be narrowly construed against the employers seeking to assert them and

15  their application limited to those establishments plainly and unmistakably within their terms

16  and spirit."  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *see also Klem*, 208 F.3d

17  at 10989.  In an FLSA case, the question of how employees spent their time is a question of

18  fact, while the question of whether those activities are exempt or non-exempt is a question of

19  law.  *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1068 (9th Cir. 1990).

20    Defendants claim that Plaintiffs were exempt under the administrative exemption.

21  Under DOL regulations,[12] the exemption has three prongs.  *See* 29 C.F.R. § 541.200(a).

22

23  [11] Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material
24  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant has the burden
   of showing that there is no genuine issue of fact[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).
25  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a
   verdict for that party."  *Id.* at 249.

26  [12] Congress has never defined the terms "executive," "administrative," or "professional." The FLSA grants the
   Secretary of Labor authority to define and delimit the scope of the exemption for executive, administrative, and
   professional employees. 29 U.S.C. § 213(a)(1). Because of this broad delegation of rulemaking authority, the

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -10
CASE NO. 2:10-CV-01123 RSM

**NICHOLS KASTER LLP**
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

1   Defendants must show that: (1) Plaintiffs were paid on a salary basis at a rate of not less than

2   $455 per week; and (2) Plaintiffs' primary duty "was the performance of office or non-manual

3   work directly related to the management or general business operations of the employer of the

4   employers' customers"; and (3) Plaintiffs' primary job duty "included the exercise of discretion

5   and independent judgment with respect to matters of significance." *Id.*

6       Plaintiffs bring this motion on the second prong, which addresses the type of work

7   performed by the employee. 29 C.F.R. § 541.201(a).  To meet this requirement, "an employee

8   must perform work directly related to assisting with the running or servicing of the business, as

9   distinguished, for example, from working on a manufacturing production line or selling a

10  product in a retail or service establishment." *Id.*  As the Ninth Circuit has explained, "[the

11  second prong] is met if the employee engages in 'running the business itself or determining its

12  overall course or policies,' not just in the day-to-day carrying out of it's the business' affairs."

13  *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002) (quoting *Bratt v. County of*

14  *Los Angeles*, 912 F.2d 1066, 1068 (9th Cir.1990)).  The DOL regulations explain that "[w]ork

15  directly related to management or general business operations includes, but is not limited to,

16  work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance;

17  quality control; purchasing; procurement; advertising; marketing; research; safety and health;

18  personnel management; human resources; employee benefits; labor relations; public relations,

19  government relations; computer network, internet and database administration; legal and

20  regulatory compliance; and similar activities."  29 C.F.R. § 541.201(b).

21      Because Defendants, as a matter of law, cannot satisfy the second prong of the

22  administrative exemption, Plaintiffs are entitled to summary judgment on this defense.

23  Plaintiffs do not concede that Defendants can satisfy the first or third prong.  However, because

24  Defendants fail the second prong, the other prongs are not addressed.

25

26  regulations issued by the Secretary have the binding effect of law.  *See Batterton v. Francis*, 432 U.S. 416, 425 n.9
    (1977).

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

**A.      Plaintiffs Are Production Workers, Not Administrative Employees**

       **1.      The Administrative/Production Dichotomy**

One tool that is used in analyzing the second prong of the administrative exemption is the "administrative/production dichotomy."  The administrative/production dichotomy has been approved of and applied by the Ninth Circuit, numerous other courts around the country, and the Department of Labor.[13]  *Bothell*, 299 F.3d at 1127; *see also Davis v. J.P.Morgan Chase & Co.*, 587 F.3d 529, 532 (2d Cir. 2009); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 694-95 (4th Cir. 2009); *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 582 (6th Cir. 2004); *Reich v. State of New York*, 3 F.3d 581, 587 (2d Cir. 1993), *overruled by implication on other grounds by Seminole Tribe v. Florida*, 517 U.S. 44 (1966); *Shockley v. City of Newport News*, 997 F.2d 18, 29 (4th Cir.1993); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 904-05 (3d Cir. 1991); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990); Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004).

Under this test, an employee is non-exempt if the employee performs "production work," which is work related to the goods or services that constitute the employer's marketplace offerings, rather than the running of the business itself.  *Bothell*, 299 F.3d at 1127. The administrative/production dichotomy allows employment to be "classified as belonging in the administrative category, which falls squarely within the administrative exception, or as production/sales work, which does not."  *Davis*, 587 F.3d at 532.  As the Ninth Circuit has

---

[13] The United States DOL has consistently taken the position that the administrative/production dichotomy is a useful in determining whether an employee is covered by the administrative exemption.  In 2004, the administrative/production dichotomy was the subject of discussion during the notice and comment period for the revised FLSA regulations.  *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004).  In the face of requests to eliminate the dichotomy, the DOL determined "the dichotomy is 'a relevant and useful tool in appropriate cases to identify employees who should be excluded from the exemption.'"  *Id.*  The DOL ended its discussion of the dichotomy by noting: "The final [administrative exemption] regulation is consistent with the Ninth Circuit's approach in Phase Metrics: the 'production versus staff' dichotomy is 'one analytical tool' that should be used 'toward answering the ultimate question,' and is only determinative if the work 'falls squarely on the production side of the line.'"  *Id.*

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

held, the administrative/production dichotomy is not always dispositive.  It is determinative only "when the work falls squarely on the production side of the line."  *Bothell*, 299 F.3d at 1127.  In other words, the administrative/production dichotomy is not dispositive in favor of the employer simply because the job duties at issue are not clearly "production."  *See id.*; *see also Martin*, 381 F.3d at 582 (rejecting the argument that all work that is not production work is automatically administrative work).

Notably, application of the administrative/production dichotomy is not limited to the "production" of goods in the manufacturing context.  *See, e.g.*, *Davis* 587 F.3d at 532 (noting that "this literal reading of 'production' to require tangible goods has no basis in law or regulation"); *Martin*, 940 F.2d at 903 (noting that the concept of production is "not to be understood as covering only work involving the manufacture of tangibles").  Indeed, the dichotomy has been applied in a wide variety of non-manufacturing settings.  *See Bothell*, 299 F.3d at 1127-28 (customer service may be production); *Davis*, 587 F.3d 529 (mortgage underwriters are production employees); *Desmond*, 564 F.3d at 694-95 (employees of defendant horse racing company produce live horse racing events); *Reich*, 3 F.3d at 587-88 (employees produce criminal investigations); *Dalheim*, 918 F.2d at 1230 (employees produce television newscasts); *Gallegos v. Equity Title Co. of Am.*, 484 F. Supp. 2d 589, 595 (W.D. Tex. 2007) (in the escrow closing business, the duties of reviewing documents, checking for errors, contacting the borrower or lender to correct discrepancies, and assuring that closing instructions are followed are "production").

### 2. Plaintiffs Were Production Workers Who Did Not Qualify For the Administrative Exemption

Plaintiffs' work as mortgage underwriters for Defendants was production work, entitling them to summary judgment on Defendants' administrative exemption defense.  The Second Circuit's decision in *Davis v. J.P. Morgan Chase & Co*, 587 F.3d 529 (2d Cir. 2009) is instructive, if not dispositive, of this issue.

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

In *Davis*, the Second Circuit addressed the application of the second prong of the administrative exemption to mortgage underwriters employed by J.P. Morgan Chase ("Chase"). The plaintiff was a mortgage underwriter whose job was to evaluate whether to issue loans to loan applicants by referring to detailed underwriting guidelines, known as the credit guide. *Id.* at 530. The guide specified how to determine qualifying characteristics, and instructed underwriters to compare this data with the criteria set out in the guidelines. *Id.* Chase also provided various supplemental guidelines and product guidelines with information specific to certain loan products. *Id.* The underwriter was expected to evaluate each loan under the guidelines, and approve the loan if it met the standards. *Id.* at 530-31. If standards were not met, certain underwriters had some ability to make exceptions to implement appropriate compensating factors. *Id.* at 531.

Applying the administrative/production dichotomy, the Second Circuit held that, as a matter of law, Chase could not meet its burden to show that its underwriters met the second prong of the administrative exemption. The Second Circuit concluded that underwriters performed the day-to-day loan sales activities of their employer, rather than "more substantial advisory duties." *Id.* at 534. The court held that Chase was in the business of "producing" loans, and the underwriters were directly engaged in creating the fundamental service provided by the bank. *Id.* at 534-35. The court reasoned:

> Underwriters at Chase performed work that was primarily functional rather than conceptual. They were not at the heart of the company's business operations. They had no involvement in determining the future strategy or direction of the business, nor did they perform any other function that in any way related to the business's overall efficiency or mode of operation. It is undisputed that the underwriters played no role in the establishment of Chase's credit policy. Rather, they were trained only to apply the credit policy as they found it, as it was articulated to them through the detailed Credit Guide.

*Id.* at 535. The Second Circuit held that the fact that underwriters assessed creditworthiness did not make them "administrative." *Id.* The court explained:

> The context of a job function matters: a clothing store accountant deciding whether to issue a credit card to a consumer performs a support function auxiliary to the department store's primary function of selling clothes. An underwriter for

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

1    Chase, by contrast, is directly engaged in creating the "goods"-loans and other
     financial services-produced and sold by Chase.

2    *Id.*

3    The Second Circuit found that additional factors also supported a finding that

4    underwriters are production employees.  The court noted that Chase referred to the duties of

5    underwriters as "production work," and that underwriters were evaluated not on whether loans

6    they approved were paid back, but by productivity in terms of "average total actions per day"

7    and by whether they met guidelines.  *Id.*  The Second Circuit found it significant that

8    underwriters were occasionally paid incentives to increase production based on factors such as

9    the number of decisions made.  *Id.*  The court explained: "[T]here is a relatively direct

10   correlation between hours worked and materials produced in the case of a production worker

11   that does not exist as to administrative employees. Paying production incentives to underwriters

12   shows that Chase believed that the work of underwriters could be quantified in a way that the

13   work of administrative employees generally cannot." *Id.* at 535.

14   The Second Circuit's decision in *Davis* compels summary judgment in Plaintiffs' favor.

15   Just as in *Davis*, GMAC is in the business of producing mortgage loans, and Plaintiffs were

16   directly engaged in this activity.  (*See supra* Facts § I.A.)  Like the underwriters in *Davis*,

17   Plaintiffs were responsible for confirming that mortgage applications met GMAC's detailed

18   underwriting guidelines.  (*Id.*)  Plaintiffs had absolutely no role in determining the overall

19   strategy or direction of the business.  (*See id.* §§ I.A-B.)  They were not involved in

20   establishing or modifying GMAC's product summaries, client guides, or credit overlays.  (*Id.* §

21   I.B.)  This was the responsibility of the Credit Policy department.  (*Id.*)  Plaintiffs' job was

22   simply to apply the guidelines as they found them.  (*Id.* § I.A.)

23   The additional factors considered in *Davis* are also present in this case.  Just as in *Davis*,

24   Plaintiffs were referred to as "production" employees within the company.  (*See supra* Facts §

25   I.A.)  Likewise, Plaintiffs' job performance was judged based on the number of files reviewed,

26   and whether they followed the guidelines.  (*Id.* § I.C.)  There were no consequences from an

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

1  underwriting perspective if a loan eventually defaulted, as long as guidelines were followed.

2  (*Id.*)  And like the underwriters in *Davis,* Plaintiffs were frequently paid "incentives" if they

3  reviewed more than a certain number of loans.  (*Id.*)  In sum, "[GMAC] believed that the work

4  of underwriters could be quantified in a way that the work of administrative employees

5  generally cannot."  *Davis*, 587 F.3d at 535.

6       Plaintiffs performed production work, not administrative work, as mortgage

7  underwriters for Defendants.  As Defendants admitted when they reclassified their

8  underwriters, the Second Circuit's analysis in *Davis* dictates that summary judgment be granted

9  in Plaintiffs' favor on Defendants' administrative exemption defense.  (Ex. B at DEF-DB 5876-

10  78 ███████████████████████

11  ██████████████████████ *see also*

12  Goodman Dep. 42:2-13 (conceding that *Davis* applies).)

       **B.**       **Even If the Court Declines to Use the Administrative/Production**
               **Dichotomy, Defendants Cannot Satisfy the Second Prong of the**
               **Administrative Exemption**

15       Even if this Court does not find that Plaintiffs' job duties are squarely "production,"

16  Plaintiffs are still entitled to summary judgment because, as a matter of law, the work they

17  perform is not "administrative."  To meet the second prong of the exemption, "an employee

18  must perform work directly related to assisting with the running or servicing of the business, as

19  distinguished, for example, from working on a manufacturing production line or selling a

20  product in a retail or service establishment."  29 C.F.R. § 541.201(a).   This includes "work in

21  functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality

22  control; purchasing; procurement; advertising; marketing; research; safety and health;

23  personnel management; human resources; employee benefits; labor relations; public relations,

24  government relations; computer network, internet and database administration; legal and

25  regulatory compliance; and similar activities."  *Id.* § 541.201(b).

26

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

As the Ninth Circuit has made clear, the essence of administrative work involves the running of the business, not simply carrying out its day-to-day affairs.  *Bratt*, 912 F.2d at 1070. Administrative activities "are not activities that involve what the day-to-day business specifically sells or provides, rather these are tasks that every business must undertake in order to function."  *Neary v. Metro. Property & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 614 (D. Conn. 2007).  "[A]dministrative functions such as management of employees through a human resources department or supervising a business's internal financial activities through the accounting department are functions that must be performed no matter what the business produces."  *Davis*, 587 F.3d at 535; *accord Martin*, 381 F.3d at 582-83.

Here, there is no dispute that the job duties of Defendants' underwriters are not "administrative."  It is undisputed that mortgage underwriters at GMAC were not involved in the overall running of servicing of the company's general business operations.  Their work was not directly related to areas such as human resources, employee benefits, finance, tax, or audit, which must be performed no matter what the business produces.  Defendants have other employees who work in these areas.  (*E.g.*, Janiczek Dep. 65:23-67:4 (noting that Defendants have separate audit and compliance departments); Muscovitch Dep. 68:10-20 (production underwriters do not work in the quality control department).)

As underwriters, Plaintiffs' job duties involved the production of loans, which is the product that GMAC provides, day-in and day-out.  Defendants cannot meet their heavy burden of proving that Plaintiffs plainly and unmistakably meet the requirements of the FLSA's administrative exemption.  Summary judgment should be granted in Plaintiffs' favor.

## II.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN PLAINTIFFS' FAVOR ON DEFENDANTS' PORTAL-TO-PORTAL ACT DEFENSE

Despite the fact that their underwriters were misclassified, Defendants claim they have no liability because they are supposedly entitled to the Portal-to-Portal Act's "good faith" defense.  *See* 29 U.S.C. § 259(a).  Contrary to Defendants' claims, the Portal-to-Portal Act does not make an employer the judge of whether they violated the law.  None of the authorities on

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

which Defendants claim to have relied states that underwriters qualify for the administrative exemption.  Defendants fail the "reliance" prong of § 259 as a matter of law.[14]

### A.   The Portal-to-Portal Act "Good Faith Reliance" Defense

The FLSA provides that an employer who violates the Act by failing to pay overtime wages "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation[.]"  29 U.S.C. § 216(b).  Employers who violate the FLSA can only avoid liability for back pay if they can show that they meet the strict requirements of the Portal-to-Portal Act's "good faith reliance" defense.

The Portal-to-Portal Act provides that

> no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.  Such a defense, if established, shall be a bar to the action or proceeding[.]

29 U.S.C. § 259(a) (emphasis added).  "[The Act] was designed to protect employers from liability if they took certain actions on the basis of an interpretation of the law by a government agency, even if the agency's interpretation later turned out to be wrong."  *EEOC v. Home Ins. Co.*, 672 F.2d 252, 263 (2d Cir. 1982).  Significantly, the Portal-to-Portal Act's "good faith" defense was not intended "to make each employer his own judge of whether or not he has been guilty of a violation."  *Id.* (quoting Message of President Truman to accompany the Portal-to-Portal Act of 1947).

The Portal-to Portal Act's "good faith" defense is an affirmative defense that the employer bears the burden of proving.  29 C.F.R. § 790.13(a); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 907 (9th Cir. 2003); *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 925 (11th Cir. 1987).

---

[14] To be clear, Plaintiffs do not concede that Defendants can satisfy <u>any</u> element of their § 259 good faith defense. Because only the reliance prong is at issue in this brief, the other elements are not addressed.

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

The burden under 29 U.S.C. § 259 is a heavy one, because it absolves employers from liability for past overtime violations.  *De Luna-Guerrero v. N.C. Grower's Ass'n., Inc.*, 370 F. Supp. 2d 386, 391 (E.D.N.C. 2005).  To be insulated from liability under § 259, an employer must show its actions (1) were in reliance on a written administrative regulation, order, ruling, approval, or interpretation (2) were in conformity with the ruling, and (3) were taken in good faith.[15]  *See Alvarez*, 339 F.3d at 907.

### B.  Defendants Cannot Show Good Faith Reliance

Defendants cannot show good faith reliance in this case.  An employer cannot avail itself of § 259's good faith defense unless it relied on a DOL interpretation that "specifically addresses [its] circumstances[.]"  *Frank v. McQuigg*, 950 F.2d 590, 598 (9th Cir. 1991).  "The administrative interpretation relied upon must provide a clear answer to the particular situation[.]"  *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 928 (11th Cir. 1987); *accord Horan v. King County*, 740 F. Supp. 1471, 1481 (W.D. Wash. 1990).  "Where an administrative interpretation is insufficient to allow objective reliance the reliance prong of the section 259 defense cannot be met[.]" *Cole*, 824 F.2d at 927. An employer cannot establish a good faith defense under § 259 where guidance supposedly "relied" upon "provided no opinion regarding the employer's particular situation."  *Id.* at 928; *see also EEOC v. Home Insurance Co.*, 672 F.2d 252, 264-65 (2d Cir. 1982).  Likewise, "[a]n employer's actual reliance upon his own incorrect interpretation of a vague and general administrative guideline will not suffice."  *Id.* at 927.  Administrative interpretations "hedged with qualifications," like a caveat that the correct

---

[15] The good faith test contains both objective and subjective components.  *Id.*  Good faith "is not to be determined merely from the actual state of [the employer's] mind."  29 C.F.R. § 790.15(a).  It also depends on an objective test, i.e., "whether the employer, in acting or omitting to act as he did . . . acted as a reasonably prudent man would have acted under the same or similar circumstances."  *Id.*  There must be "honesty of intention and no knowledge of circumstances which ought to put him upon inquiry."  *Id.*  With regard to conformity, the employer must show that it actually conformed to the regulation, order, ruling, approval, or interpretation.  29 C.F.R. § 790.14(a).  "This is true even though the employer erroneously believes he conformed with it and in good faith relied upon it[.]"  *Id.*  Likewise, the employer must plead and prove "that he actually relied upon it."  29 C.F.R. § 790.16(a).

answer depends upon particular circumstances, cannot provide the definitive opinion necessary to raise the statutory bar of § 259. *Id.* at 928.

### 1. The DOL's FLSA2006-31 Opinion Letter on Loan Officers Cannot Support Defendants' Good Faith Defense

The Court should reject Defendants' claims of good faith based on the DOL's FLSA2006-31 loan officer opinion letter. The FLSA2006-31 letter provides no answer on whether underwriters should be classified as exempt, let alone the clear answer that is required to maintain a § 259 defense. It cannot support a good faith defense.

On its face, the FLSA2006-31 opinion letter simply does not provide any answer, clear or otherwise, on how underwriters should classified. ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████ Accordingly, the DOL *never* issued an opinion letter on mortgage underwriters. As set forth fully above, FLSA2006-31 purported to describe hypothetical job duties of "mortgage loan officers" who work directly with prospective homebuyers and perform duties such as (1) responding to inquiries from potential customers or "leads," (2) assisting the customer in identifying the appropriate loan for their individual financial circumstances to help them achieve their financial goals, (3) "advising" the customer on the risks and benefits of different loan products, including all of the potential options and variables, and (4) giving specific "analysis, evaluation, and advice" to the customer on the hundreds of loan products to choose from. (*See* Ex K.)

These are not the job duties of an underwriter. As Defendants admit in their own documents, underwriters do not perform the duties set forth in FLSA2006-31:



(Ex. B at DEF-DB 5878 (emphasis added).) As Defendants admit, the job of an underwriter starts after the loan officer has originated the loan. After the data from the loan application has

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -20
CASE NO. 2:10-CV-01123 RSM

**NICHOLS KASTER LLP**
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

been entered into the AUS system, the underwriter validates that the data entered was accurate, and reviews the loan file for compliance with guidelines.  (*See supra* Facts § I.A.)

Amazingly, despite bringing a motion to dismiss and representing to the Court that the FLSA2006-31 opinion letter supposedly gave an "express" answer to how underwriters should be classified, (ECF No. 30 at 2-3), Defendants failed to disclose to the Court that the Morgan Lewis firm *had specifically advised them the opposite* during their 2006 underwriter audit. Indeed, in December 2006—three months after the DOL issued the FLSA2006-31 opinion letter—the attorneys from Morgan Lewis told Defendants in no uncertain terms that "*[t]here have been no opinion letters issued by the Department of Labor analyzing this particular issue.*"  (Ex. I p.6 n.3 (emphasis added).)  Defendants reviewed the legal research contained in the letter, and agreed with it.  (Janiczek Dep. 88:1-17.)  Outside counsel from Morgan Lewis candidly admitted at her deposition that there is no DOL letter that specifically addresses underwriters, or the application of the administrative exemption to underwriters.  (Bouchard Dep. 26:12-25 ("There had been no opinion letters addressing the underwriter position specifically."), 34:8-17 ("There's not an opinion letter that addresses underwriters specifically."), 35:4-16 ("It did not address all of the job duties of the underwriter because it was addressing the job duties specific to a loan officer.").)

On top of this, Maxine Goodman, the lawyer who advised Defendants in 2009, admitted at her deposition that she *never advised* Defendants that FLSA2006-31 clearly addressed how underwriters should be classified.  (Goodman Dep. 34:10-16.)  Her testimony is clear:

> Q.    Okay. And did you ever advise GMAC that this 2006 opinion letter that we're looking at gave a clear answer to whether underwriters should be exempt or nonexempt?
>
> A.    Gave a clear answer? No, that would be irresponsible of me as an attorney to say that something gave a clear answer.

(*Id.*)  Defendants cannot now claim that the letter gave them a clear answer when their own lawyers advised them the opposite.  *Cole*, 824 F.2d at 928 ("The administrative interpretation relied upon must provide a clear answer to the particular situation[.]").

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

Because the FLSA2006-31 letter does not address whether mortgage underwriters meet the requirements for the FLSA's administrative exemption, Defendants could not rely on it, and cannot meet the reliance requirement of § 259.  *See, e.g.*, *Schneider v. City of Springfield*, 102 F. Supp. 2d 827, 834 (S.D. Ohio 1999) ("In short, the foregoing letter rulings do not address the Defendant's particular circumstances. The Defendant was not concerned with § 207(k)'s applicability to civilian dispatchers, and the Plaintiff did not 'fit precisely' within the terms of the Administrator's ruling."); *Nelson v. Ala. Inst. for Deaf and Blind*, 896 F. Supp. 1108, 1113 (N.D. Ala. 1995) (denying § 259 defense where the opinion letter at issue "did not specifically" address the type of employee at issue, and noting that the employer's actions were taken pursuant to its erroneous interpretation of the letter and the regulations); *Int'l Ass'n of Firefighters, Local 349 v. City of Rome*, 682 F. Supp. 522, 533 (N.D. Ga. 1988) ("Because the written agency interpretations provided no guidance on this issue, it was impossible for the City to rely upon them in concluding that the continuation in working constituted agreement.").

### 2. The DOL Regulations Cited by Defendants Cannot Form the Basis of a Good Faith Defense

The various DOL regulations cited by Defendants likewise cannot support their alleged good faith defense.  None of the regulations cited by Defendants says that underwriters are exempt (clearly or otherwise), and all are too general support a § 259 good faith defense.  The regulations that Defendants claim to have relied on are addressed below.

First, 29 C.F.R. § 541.200 is just the general rule regarding the administrative exemption.  As Defendants' Rule 30(b)(6) witness admitted, it says nothing about whether any specific group of employees is exempt, and certainly does not reference mortgage underwriters. (Janiczek Dep. 93:6-15 ("I don't believe it specifically addresses how underwriters should be classified").)  Second, 29 C.F.R. § 541.203(b), gives some examples of duties performed by employees in the financial industry who may "generally" meet the requirements for the administrative exemption if the general duties requirement of § 541.200 are met.   It does not provide specific guidance on any groups of employees, and does not address underwriters.

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

Third, 29 C.F.R. § 541.703(b)(7) discusses a "credit manager" who "makes and administers" credit policy, "establishes credit limits for customers," "authorizes shipments of orders on credit," and "check[s] the status of accounts to determine whether the credit limit would be exceeded by the shipment of a new order." These are not the duties of a mortgage underwriter. They aren't even the duties of an employee in the mortgage industry. Finally, 29 C.F.R. § 541.704 is simply a general regulation discussing the effect of an employee's use of manuals on the various FLSA exemptions.

Allowing Defendants to maintain a § 259 defense base on these general regulations "would mean that any employer could establish a good-faith defense simply by showing that it 'relied' on a general administrative guideline that provided no opinion regarding the employer's particular situation." *See, e.g.*, *Cole*, 824 F.2d at 928. This is not what this statute intended. The § 259 good faith defense is simply not available for decisions based on general regulations that do not clearly address the particular situation at hand. *See, e.g.*, *Burnison v. Memorial Hosp., Inc.*, 820 F. Supp. 549, 558 (D. Kan. 1993) (denying good faith defense based on DOL regulations involving compensation for sleeping periods because: "The ultimate resolution of the sleep period issue turns upon whether the sleeping facilities are adequate and whether the plaintiffs usually receive an uninterrupted night's sleep. These are distinctly factual questions upon which the regulation offers no guidance."); *Adams v. Pittsburg State Univ.*, 832 F. Supp. 318, 323 (D. Kan. 1993) ("The regulations cited by defendant also do not specifically address the alleged violation in this case. Indeed, they exemplify the ambiguity in the law."); *Renfro v. City of Emporia, Kan.*, 732 F. Supp. 1116, 1119 (D. Kan. 1990) ("The court finds that the guidelines and illustrative applications contained in the regulations cited by defendant are too general to support a section 259 defense in this case.").

In sum, allowing Defendants to maintain a § 259 defense based on the regulations and opinion letter at issue in this case would have the effect of making Defendants their own judge of whether they have been guilty of an FLSA violation. *See Home Ins. Co.*, 672 F.3d at 265

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

1  (quoting Message of President Truman to accompany the Portal-to-Portal Act of 1947).  This is

2  not what the statute intended.  Plaintiffs' motion should be granted.

3  **CONCLUSION**

4       For all of the reasons set forth herein, Plaintiffs respectfully request that the Court grant

5  their motion for summary judgment in full.

6  DATED this 13th day of January, 2012.    NICHOLS KASTER, LLP

7

8                       By:  /s/ Robert L. Schug, *Admitted Pro Hac Vice*

9                              Paul J. Lukas, *Admitted Pro Hac Vice*
                            Email:  lukas@nka.com

10                             Robert L. Schug, *Admitted Pro Hac Vice*
                            Email:  rschug@nka.com

11                             One Embarcadero Center, Suite 720
                            San Francisco, California  94111

12                             Telephone: (415) 277-7235
                            Facsimile: (415) 277-7238

13

14                             Beth E. Terrell, WSBA # 26759
                            Email:  bterrell@tmdlegal.com

15                             TERRELL MARSHALL & DAUDT PLLC
                            3600 Fremont Avenue North

16                             Seattle, Washington 98103
                            Telephone:  206.816.6603

17                             Facsimile:   206.350.3528

18                             *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

1
2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

3

**CERTIFICATE OF SERVICE**
Bollinger v. Residential Capital, LLC.
Court File No. 2:10-cv-01123-RSM

4
5

I hereby certify that on January 13, 2012, I caused the above Plaintiffs' Motion for

6

Partial Summary Judgment to be filed electronically with the Clerk of Court through ECF, and

7

that ECF will send an e-notice of the electronic filing to the following:

8
9

| | | |
|---|---|---|
| Beth E. Terrell | bterrell@tmdlega.com | bkinsey@tmdlegal.com |
| | enordby@tmdlegal.com | filing@tmdlegal.com |

10

Paul J. Lukas          lukas@nka.com

11

Robert L. Schug          rschug@nka.com

12

Matthew C. Helland          helland@nka.com          assistants@nka.com

13

| | | |
|---|---|---|
| David R Golder | golderd@jacksonlewis.com | curleyc@jacksonlewis.com |
| | votert@jacksonlewis.com | |

14
15

Paul DeCamp          decampp@jacksonlewis.com

Peter H Nohle          nohlep@jacksonlewis.com          baker-browns@jacksonlewis.com,

16

daviesj@jacksonlewis.com          prestona@jacksonlewis.com

17

William J Anthony          anthonyw@jacksonlewis.com

18
19

DATED this 13th day of January, 2012.

20

NICHOLS KASTER LLP

21
22

By:  s/Robert L. Schug
     Robert L. Schug, CABA #249640

23

     Email:  rschug@nka.com
     One Embarcadero Center, Suite 720

24

     San Francisco, CA 94111
     P: 415.277.7235

25

     F: 415.277.7238

26

CERTIFICATE OF SERVICE - 1
CASE NO. 2:10-CV-01123 RSM

**NICHOLS KASTER LLP**
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238