# EXHIBIT L
# TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

U.S. Department of Labor
Wage and Hour Division
Washington, DC 20210



## Administrator's Interpretation No. 2010-1

March 24, 2010

Issued by DEPUTY ADMINISTRATOR NANCY J. LEPPINK

---

SUBJECT: Application of the Administrative Exemption under Section 13(a)(1) of the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1), to Employees who Perform the Typical Job Duties of a Mortgage Loan Officer.

---

Based on the Wage and Hour Division's significant enforcement experience in the application of the administrative exemption, a careful analysis of the applicable statutory and regulatory provisions and a thorough review of the case law that has continued to develop on the exemption, the Administrator is issuing this interpretation to provide needed guidance on this important and frequently litigated area of the law. Based on the following analysis it is the Administrator's interpretation that employees who perform the typical job duties of a mortgage loan officer, as described below, do not qualify as bona fide administrative employees exempt under section 13(a)(1) of the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1).

Typical Job Duties of Mortgage Loan Officers

The financial services industry assigns a variety of job titles to employees who perform the typical job duties of a mortgage loan officer. Those job titles include mortgage loan representative, mortgage loan consultant, and mortgage loan originator. For purposes of this interpretation the job title of mortgage loan officer will be used. However, as the regulations make clear, a job title does not determine whether an employee is exempt. The employee's actual job duties and compensation determine whether the employee is exempt or nonexempt. 29 C.F.R. § 541.2.[1]

Facts found during Wage and Hour Division investigations and the facts set out in the case law establish that the following are typical mortgage loan officer job duties: Mortgage loan officers receive internal leads and contact potential customers or receive contacts from customers generated by direct mail or other marketing activity. Mortgage loan officers collect required financial information from customers they contact or who contact them, including information about income, employment history, assets, investments, home ownership, debts, credit history, prior bankruptcies, judgments, and liens. They also

---

[1] This Administrator's Interpretation applies to employees who spend the majority of their time working inside their employer's place of business, including employees who work in offices located in their homes, rather than mortgage loan officers who are customarily and regularly engaged away from their employer's place of business. It also applies to employees who do not spend the majority of their time engaging in "cold-calling", contacting potential customers who have not in some manner expressed an interest in obtaining information about a mortgage loan. However, because many of the duties of all mortgage loan officers are similar, cases arising in these other contexts are referred to for guidance and cited in this interpretation.

run credit reports. Mortgage loan officers enter the collected financial information into a computer program that identifies which loan products may be offered to customers based on the financial information provided. They then assess the loan products identified and discuss with the customers the terms and conditions of particular loans, trying to match the customers' needs with one of the company's loan products. Mortgage loan officers also compile customer documents for forwarding to an underwriter or loan processor, and may finalize documents for closings. *See, e.g., Yanni v. Red Brick Mortgage*, 2008 WL 4619772, at *1 (S.D. Ohio 2008); *Pontius v. Delta Financial Corp.*, 2007 WL 1496692, at *2 (W.D. Pa. 2007); *Geer v. Challenge Financial Investors Corp.*, 2007 WL 2010957 (D. Kan. 2007), at *2; *Chao v. First National Lending Corp.*, 516 F. Supp. 2d 895, 904 (N.D. Ohio 2006), *aff'd*, 249 Fed.App. 441 (6th Cir. 2007); *Epps v. Oak Street Mortgage LLC*, 2006 WL 1460273, at *4 (M.D. Fla. 2006); *Rogers v. Savings First Mortgage, LLC*, 362 F. Supp. 2d 624, 627 (D. Md. 2005); *Casas v. Conseco Finance Corp.*, 2002 WL 507059, at *1 (D. Minn. 2002).

Exemptions from minimum wage and overtime requirements under the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). To fall within the meaning of an "employee employed in a bona fide administrative capacity" an employee's job duties and compensation must meet all of the following tests:

1. The employee must be compensated on a salary or fee basis as defined in the regulations at a rate not less than $455 per week;
2. The employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
3. The employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200.

This interpretation focuses on the application of the second test to employees who perform the typical jobs duties of a mortgage loan officer:

> Whether the primary duty of employees who perform the typical job duties of a mortgage loan officer is office or non-manual work directly related to the management or general business operations of their employer or their employer's customers.

Primary Duty is Work Directly Related to the Management and General Business Operations of the Employer.

An employee's primary duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). To be exempt, a mortgage loan officer's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). In turn, to be work directly related to the management or general business operations of the employer, the work must be "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Work directly related to management or general business operations of an employer includes work in functional areas such as accounting, budgeting, quality control, purchasing, advertising, research, human resources, labor relations, and similar areas. 29 C.F.R. § 541.201(b).

2

Thus, the administrative exemption is "limited to those employees whose primary duty relates 'to the administrative as distinguished from the production operations of a business.'"  69 Fed. Reg. 22122, 22141 (April 23, 2004), quoting the 1949 Weiss Report.  In other words, "it relates to employees whose work involves servicing the business itself – employees who 'can be described as staff rather than line employees.'"  *Id.*, quoting the 1940 Stein Report.

This "production versus administrative" dichotomy is intended to distinguish "between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to 'running the business itself.'"  *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002), quoting *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990); *see Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2nd Cir. 2009) ("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business."); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990) (the dichotomy distinguishes between "those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market"); Wage and Hour Opinion Letter FLSA2005-21 (Aug. 19, 2005) (same).  Thus, the dichotomy is "a relevant and useful tool in appropriate cases to identify employees who should be excluded from the exemption."  69 Fed. Reg. at 22141.  Moreover, the dichotomy is "determinative if the work 'falls squarely on the production side of the line.'"  *Id.*, quoting *Bothell v. Phase Metrics, Inc.*, 299 F.3d at 1127; *see* Wage and Hour Opinion Letter FLSA2006-45 (Dec. 21, 2006) (copy editors working for a marketing firm that promotes the sale of books, who read and correct the firm's marketing promotional materials, fall squarely on the production side of the line and, therefore, are not exempt); Wage and Hour Opinion Letter FLSA2005-21 (Aug. 19, 2005) (background investigators working for a company that contracts with the government to conduct security clearance investigations of potential government employees perform the day-to-day production work of their employer and, therefore, are not exempt).

Work does not qualify as administrative simply because it does not fall squarely on the production side of the line.  As the court stated in *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 582 (6th Cir. 2004), while production work cannot be administrative, there is no "absolute dichotomy under which all work must either be classified as production or administrative."  The court rejected the company's argument that its information technology support specialists were administrative employees because they performed troubleshooting on computers on individual employees' desks and were not directly involved with the nuclear power plant equipment that "produced" electricity.  Otherwise, the court asserted, employees such as "the janitorial staff, the security guards, the cooks in the cafeteria, and various other workers" would be viewed as doing administrative work.  *Id.*; *see Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 402-03 (6th Cir. 2004) (employee who was primarily responsible for shipments of radioactive materials and waste away from the plant, setting up shipments with the transporter and waste management facility, determining the type of packaging to be used, preparing manifests, inspecting containers, etc., is not engaged in administrative work simply because he is engaged in an activity collateral to the principal business purpose of producing electricity; duties must be related to servicing the business itself to be administrative).

The decision in *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3d Cir. 1991), *cert. denied*, 503 U.S. 936 (1992), in which the Third Circuit evaluated the status of inside salespersons who sold electrical products for their employer, is instructive.  The court found that such inside salespersons were production workers who did not qualify for the administrative exemption because the company's primary business purpose was to sell electrical products.  The court concluded that the salespersons did not "service" the business simply because they engaged in negotiations and represented the employer in

3

their sales efforts, because such negotiations over the price and other terms of the sale "are 'part and parcel' of the activity of 'producing sales'." *Id.* at 904. Accordingly, any such duties undertaken "in the course of ordinary selling do not constitute administrative-type 'servicing' of Cooper's wholesale business . . . These activities are only routine aspects of sales *production*." *Id.* at 905 (emphasis in original); *see* Wage and Hour Opinion Letter of July 23, 1997, 1997 WL 970727 (although "marketing activity geared to furthering a company's overall sales effort," such as performing public relations or advertising or designing a company's overall sales campaign, is administrative work, engaging in "ordinary day-in-day-out selling activity directed at making specific sales" is not).

The court in *Casas v. Conseco* applied these principles to mortgage loan officers and held that they were "production rather than administrative employees. Conseco's primary business purpose is to design, create and sell home lending products. As loan originators making direct contact with customers, it is plaintiffs' primary duty to sell these lending products on a day-to-day basis." 2002 WL 507059, at *9. The court concluded that the loan officers were unlike the exempt marketing representatives in *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997). The representatives in *John Alden* were engaged in more than routine selling efforts focused on particular sales transactions; their marketing efforts were aimed at independent insurance agents and were directed more broadly toward promoting and increasing the company's sales generally. However, because Conseco's loan officers' duties were "selling loans directly to individual customers, one loan at a time," 2002 WL 507059, at *9, the court held that the administrative exemption did not apply. *Accord Wong v. HSBC Mortgage Corp.*, 2008 WL 753889, at *7 (N.D. Cal. 2008) (granting summary judgment to plaintiffs with regard to the administrative exemption because "defendants have not identified any evidence to support a finding that plaintiffs' primary duty is something other than sales"). The preamble to the 2004 Final Rule distinguished between *Casas* and *John Alden* (and other insurance industry cases), emphasizing the difference between employees who have a primary duty of sales and employees who spend the majority of their time on a variety of duties such as promoting the employer's financial products generally, deciding on an advertising budget and techniques, running an office, hiring staff and setting their pay, servicing existing customers (by providing insurance claims service), and advising customers. 69 Fed. Reg. at 22145-46; *see Pontius v. Delta Financial Corp.*, 2007 WL 1496692, at *8 (denying defendant's motion for summary judgment on the administrative exemption, stating that plaintiff's evidence indicated that the loan officers' primary duty is to generate loan sales, rather than assisting in the administrative operations, and that they have duties "flatly distinguishable from those of the insurance industry employees" in the cases discussed in the preamble).

The case law and regulatory distinction between servicing the business and routine sales work requires an examination of whether an employee who performs the typical job duties of a mortgage loan officer has the primary duty of making sales. The regulations implementing the section 13(a)(1) exemption for "outside" sales employees identify some of the factors that should be considered in determining whether an employee's primary duty is making sales. The regulations state that among the factors to be considered in determining whether an employee has a primary duty of making outside sales are: the employee's job description; the employer's qualifications for hire; sales training; method of payment; and proportion of earnings directly attributable to sales. 29 C.F.R. § 541.504(b); *see Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545, 550 (E.D. Mich. 2004) (relevant factors in evaluating whether an employee has a primary duty of outside sales include whether the employee solicits customers, receives sales training, is compensated by commission, is labeled a salesman, is held to a production standard, and has freedom from supervision); *Belton v. Premium Mortgage, Inc.*, 2006 WL 561489, at *2 (W.D. Mo. 2006) (similar factors).[2] Moreover, in determining whether an employee's primary duty is making

---

[2] Of course, section 13(a)(1) only exempts "outside" salesmen.

4

sales, the work performed incidental to sales should be also be considered sales work. *See Pontius v. Delta Financial Corp.*, 2007 WL 1496692, at *9 and n.20 (loan officers compile and analyze potential customers' financial data because "doing so is necessary to evaluate the customers' qualifications for a loan, *i.e.*, to make a sale." They are not analyzing the information to provide advice to the customer, which the customer could take and use elsewhere. Rather, the loan officers are performing "*screening* for the benefit of the employer, rather than *servicing* for the benefit of the customer.") (emphasis in original); *see also* 29 C.F.R. § 541.500(b) ("work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences").[3] Applying these factors to the job duties mortgage loan officers typically perform leads to the conclusion that they have a primary duty of making sales.

Further, in addition to the job duties described above, the facts set out in the case law demonstrate that historically mortgage loan officers were often compensated entirely by commissions, and that today many mortgage loan officers continue to be paid primarily by commissions, sometimes with a base wage, salary, or draw against the commissions. The commissions are based upon sales that are completed (*i.e.*, loans that actually close), with the commission amount typically based upon the value of the loan. *See, e.g., Underwood v. NMC Mortgage Corp.*, 2009 WL 1269465, at *1 (D. Kan. 2009) (repayable draw against commissions of $1,400 per month until early 2005; afterwards a minimum salary of $1,000 per month plus commissions); *Henry v. Quicken Loans Inc.*, 2009 WL 596180, at *10 (E.D. Mich. 2009) (minimum base salary plus commissions); *McCaffrey v. Mortgage Sources Corp.*, 2009 WL 2778085, at **2-3 (D. Kan. 2009) (commissions only); *Yanni v. Red Brick Mortgage*, 2008 WL 4619772, at **1-3 (commissions only, based on loans that closed); *Pontius v. Delta Financial Corp.*, 2007 WL 1496692, at *2 (base salary plus commissions, with commissions earned subject to off-set for failure to meet a minimum sales goal in a prior pay period); *Saunders v. Ace Mortgage Funding, Inc.*, 2007 WL 1190985, at **2-3 (D. Minn. 2007) (commissions only until June 2005, with a minimum guarantee treated as a draw against future commissions after that); *Chao v. First National Lending Corp.*, 516 F. Supp. 2d 895, 904-05 (commissions only, based on loans that closed). Such payment methods support the conclusion that a mortgage loan officer's primary duty is sales.

In addition, employers often train their mortgage loan officers in sales techniques and evaluate their performance on the basis of their sales volume, factors that also are relevant to the analysis of mortgage loan officers' primary duty. For example, in *Epps v. Oak Street Mortgage LLC*, 2006 WL 1460273, at *5, loan officers were required to meet a production goal of closing three loans per month, and were evaluated using a form that focused in part on whether they met their sales requirements. They were required to work on Saturday if they did not meet their sales requirements, and numerous loan officers were disciplined or terminated for failing to meet their sales requirements, as were their managers. *See Pontius v. Delta Financial Corp.*, 2007 WL 1496692, at *2 (such employees "are hired, trained, earn commissions, and are otherwise successful in their positions, on the basis of their sales performance"); *Belton v. Premium Mortgage, Inc.*, 2006 WL 561489, at *1 (employees "were trained as salespeople in order to learn the mortgage business and to increase their individual sales efforts"); *Casas v. Conseco Finance Corp.*, 2002 WL 507059, at *9 (numerous separation notices showed that their "performance

---

[3] Because work performed incidental to and in conjunction with the employee's own sales or solicitations is considered exempt sales work, the Administrator rejects the September 8, 2006 Wage and Hour Opinion Letter FLSA2006-31's inappropriately narrow definition of sales as including only "customer-specific persuasive sales activity," which is the time that a loan officer spends directly engaged in selling mortgage loan products to customers.

5

was measured largely according to their sale production"). These factors also support the conclusion that a mortgage loan officer's primary duty is making sales.

Moreover, many employers defending against FLSA lawsuits brought by mortgage loan officers argue that the employees are exempt under section 13(a)(1) as outside sales employees. In these cases, the issue is whether the mortgage loan officers are *outside* salespeople or *inside* salespeople, but the employer concedes their primary duty is sales (a required element of this exemption).[4] Thus, mortgage companies' own defenses are consistent with the conclusion that a loan officer's primary duty is sales.[5]

Finally, courts have repeatedly found that mortgage loan officers who work inside their employer's place of business have a primary duty of sales. *See Chao v. First National Lending Corp.*, 516 F. Supp. 2d at 901 ("[t]here is no question that the primary purpose of loan officers employed by FNL is to make sales or obtain orders or contract for services."); *Barnett v. Washington Mutual Bank*, 2004 WL 1753400, at *7 (N.D. Cal. 2004) (mortgage loan officers working at a nationwide call center "were engaged primarily in selling a product, namely, home mortgages"); *Casas v. Conseco Finance Corp.*, 2002 WL 507059, at *9 ("[a]s loan originators making direct contact with customers, it is plaintiffs' primary duty to sell these lending products on a day-to-day basis."). Indeed, the Administrator is not aware of any court that has found that mortgage loan officers – working either inside or outside – have a primary duty other than sales.

Thus, a careful examination of the law as applied to the mortgage loan officers' duties demonstrates that their primary duty is making sales and, therefore, mortgage loan officers perform the production work of their employers. Work such as collecting financial information from customers, entering it into the computer program to determine what particular loan products might be available to that customer, and explaining the terms of the available options and the pros and cons of each option, so that a sale can be made, constitutes the production work of an employer engaged in selling or brokering mortgage loan products. Such duties do not relate to the internal management or general business operations of the company; they do not involve servicing the business itself by providing advice regarding internal operations, unlike the duties of employees working in, for example, a firm's human resources department, accounting department, or research department. The typical job duties of a mortgage loan officer comprise a financial services business' marketplace offerings, the selling of loan products. Their

---

[4] *See McCaffrey v. Mortgage Sources Corp.*, 2009 WL 2778085, at *4; *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 527 F. Supp. 2d 1053, 1066 (N.D. Cal. 2007); *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 640 (S.D. Cal. 2007); *Chao v. First National Lending Corp.*, 516 F. Supp. 2d at 900; *Geer v. Challenge Financial Investors Corp.*, 2005 WL 2648054, at **2-3; *Belton v. Premium Mortgage, Inc.*, 2006 WL 561489, at *1; *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d at 549-50; *Casas v. Conseco Finance Corp.*, 2002 WL 507059, at **10-11.

[5] Some employers have argued that loan officers are exempt under section 7(i), 29 U.S.C. § 207(i), as commissioned employees of a retail or service establishment who receive more than half their earnings from commissions. In these cases, the primary issue is whether the employer qualifies as a retail or service establishment. *See Underwood v. NMC Mortgage Corp.*, 2009 WL 1269465, at **2-3; *Wong v. HSBC Mortgage Corp.*, 2008 WL 753889, at **7-8; *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 527 F. Supp. 2d at 1066; *Pontius v. Delta Financial Corp.*, 2007 WL 1496692, at *3; *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. at 640; *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d at 536-42; *Barnett v. Washington Mutual Bank*, 2004 WL 1753400, at **2-6; *Casas v. Conseco Finance Corp.*, 2002 WL 507059, at **3-5. This defense also is consistent with an employee having a primary duty of sales.

duties involve the day-to-day carrying out of the employer's business and, thus, fall squarely on the production side of the business.

Work Related to the Management or General Business Operations of the Employer's Customers

The administrative exemption can also apply if the employee's primary duty is directly related to the management or general business operations of the *employer's customers*. "Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." 29 C.F.R. § 541.201(c).

To determine whether a mortgage loan officer's duties are directly related to the management or general business operations of the employer's customers, it is necessary to focus on the identity of the customer. As the preamble to the final rule explained in addressing the provision that advisers and consultants could qualify for the administrative exemption based upon their work for the employer's customers:

> Nothing in the existing or final regulations precludes the exemption because the customer is an individual, rather than a business, as long as the work relates to management or general business operations. As stated by commenter Smith, the exemption does not apply when the individual's 'business' is purely personal, but providing expert advice to a small business owner or a sole proprietor regarding management and general business operations, for example, is an administrative function. . . This provision is meant to place work done for a client or customer on the same footing as work done for the employer directly, regardless of whether the client is a sole proprietor or a Fortune 500 company, as long as the work relates to 'management or general business operations.'

69 Fed. Reg. at 22142.

Thus, work for an employer's customers does not qualify for the administrative exemption where the customers are individuals seeking advice for their personal needs, such as people seeking mortgages for their homes. Individuals acting in a purely personal capacity do not have "management or general business operations" within the meaning of this exemption. However, if the customer is a business seeking advice about, for example, a mortgage to purchase land for a new manufacturing plant, to buy a building for office space, or to acquire a warehouse for storage of finished goods, the advice regarding such decisions might qualify under the administrative exemption.[6] *See Bratt v. County of Los Angeles*, 912 F.2d at 1070 (stating, with regard to employees like stock brokers and insurance claims agents, "[t]o the extent that these employees primarily serve as general financial advisors or as consultants on the proper way to conduct a business, *e.g.*, advising businesses how to increase financial productivity or reduce insured risks, these employees properly would qualify for exemption under this regulation."); *Talbott v. Lakeview Center, Inc.*, 2008 WL 4525012, at *5, n.5 (N.D. Fla. 2008) (in context of firm that provides foster care and child protective services, provision pertaining to the employer's customers is not "relevant because even if Lakeview's foster clients are 'customers,' they do not have 'general business operations.'").[7]

---

[6] Of course the salary test and the test that the primary duty requires the exercise of discretion and independent judgment with respect to matters of significance must also be met.

[7] *See also* Wage and Hour Opinion Letter FLSA2007-7 (Feb. 8, 2007) (case managers working for a service provider for individuals with disabilities are performing the day-to-day production work of their employer and are not "providing administrative services to the employer's customers as contemplated in

7

Based on the above analysis of the typical mortgage loan officer's duties and conclusion that his or her primary duty is making sales for the employer, and because homeowners do not have management or general business operations, a typical mortgage loan officer's primary duty is not related to the management or general business operations of the employer's customers.

Application of 29 C.F.R. § 541.203(b)

Wage and Hour Opinion Letter FLSA2006-31 (Sept. 8, 2006) appears to assume that the example provided in 29 C.F.R. § 541.203(b) creates an alternative standard for the administrative exemption for employees in the financial services industry. That regulation states:

> Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the *customer's* income, assets, investments or debts; determining which financial products best meet the *customer's* needs and financial circumstances; advising the *customer* regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. *However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.*

29 C.F.R. § 541.203(b) (emphasis added).[8] Contrary to the assumption in Opinion Letter FLSA 2006-31, the administrative exemption is only applicable to employees that meet the requirements set forth in 29 C.F.R. § 541.200. The regulation at 29 C.F.R. § 541.203(b) merely provides an example to help distinguish between those employees in the financial services industry whose primary duty is related to the management or general operations of the employer's customers and those whose primary duty is selling the employer's financial products. The fact example at 29 C.F.R. § 541.203(b) is not an alternative test, and its guidance cannot result in it "swallowing" the requirements of 29 C.F.R. § 541.200.

As discussed above, mortgage loan officers typically have the primary duty of making sales on behalf of their employer; as such, their primary duty is not directly related to the management or general business operations of their employer or their employer's customers. Because of its misleading assumption and selective and narrow analysis, Opinion Letter FLSA2006-31 does not comport with this interpretive guidance and is withdrawn. Similarly, an Opinion Letter dated February 16, 2001, 2001 WL 1558764, also is withdrawn as inconsistent with this analysis.

Conclusion

---

29 C.F.R. § 541.201(c)"); Wage and Hour Opinion Letter FLSA2005-30 (Aug. 29, 2005) (same); Wage and Hour Opinion Letter FLSA2005-21 (Aug. 19, 2005) (background investigators of private firm that conducts security clearance investigations of potential hires for government agencies could be viewed as performing work related to the management or general business operations of the employer's customers).

[8] The case law and the Department's enforcement experience indicate that the duty listed last, pertaining to general promotion work for the employer, is a minor aspect of a typical loan officer's job. Moreover, to the extent that such promotion work is performed incidental to and in conjunction with an employee's own sales or solicitations, it is sales work. *See* 29 C.F.R. § 541.503(a).

8

Based upon a thorough analysis of the relevant factors, the Administrator has determined that mortgage loan officers who perform the typical duties described above have a primary duty of making sales for their employers and, therefore, do not qualify as bona fide administrative employees exempt under section 13(a)(1) of the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1).